IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUSAN BOLYEN,<br><br>    Plaintiff,<br><br>  v.<br><br>ZYNGA INC., MARK PINCUS, FRANK GIBEAU, REGINA E. DUGAN, WILLIAM GORDON, LOUIS J. LAVIGNE JR., CAROL G. MILLS, JANICE M. ROBERTS, ELLEN F. SIMINOFF, and NOEL WATSON,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Susan Bolyen ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.  This is an action against Zynga Inc. ("Zynga" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Zynga by Take-Two Interactive Software, Inc. ("Take-Two"), Zebra MS I, Inc. ("Merger Sub I"), and Zebra MS II, Inc. ("Merger Sub II").

1

2. On March 14, 2022, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") pursuant to the Securities Act of 1933 in connection with the Proposed Transaction.

3. The Registration Statement, which recommends that Zynga shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) Zynga's, Take-Two's, and the combined company's financial projections; and (2) the financial analyses performed by Zynga's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (3) potential conflicts of interest involving the Company's insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed decision as to how to vote their shares in connection with the Proposed Transaction. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the

damages occurred in this District, and the Company transacts business in this District and/or is incorporated in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

9. Plaintiff is, and has been at all relevant times hereto, an owner of Zynga common stock.

10. Defendant Zynga develops, markets, and operates social game services in the United States and internationally. Zynga is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "ZNGA."

11. Defendant Mark Pincus ("Pincus") is founder and Chairman of the Board of the Company.

12. Defendant Frank Gibeau ("Gibeau") is Chief Executive Officer ("CEO") and a director of the Company.

13. Defendant Regina E. Dugan ("Dugan") is a director of the Company.

14. Defendant William Gordon ("Gordon") is a director of the Company.

15. Defendant Louis J. Lavigne Jr. ("Lavigne") is a director of the Company.

16. Defendant Carol G. Mills ("Mills") is a director of the Company.

17. Defendant Janice M. Roberts ("Roberts") is a director of the Company.

18. Defendant Ellen F. Siminoff ("Siminoff") is a director of the Company.

19. Defendant Noel Watson ("Watson") is a director of the Company.

20. Defendants Pincus, Gibeau, Dugan, Gordon, Lavigne, Mills, Roberts, Siminoff, and Watson are collectively referred to herein as the "Individual Defendants."

21. Defendants Zynga and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

22. On January 10, 2022, Zynga and Take-Two announced the Proposed Transaction whereby Take-Two would acquire Zynga for $3.50 per share in cash and $6.36 in shares of Take-Two common stock for each share of Zynga stock. The press release announcing the Proposed Transaction states, in relevant part:

**Take-Two and Zynga to Combine, Bringing Together Best-in-Class Intellectual Properties and a Market-Leading, Diversified Mobile Publishing Platform, to Enhance Positioning as a Global Leader in Interactive Entertainment**

\* \* \*

January 10, 2022 07:00 AM Eastern Standard Time

NEW YORK & SAN FRANCISCO--(BUSINESS WIRE)--Take-Two Interactive (NASDAQ: TTWO) (the "Company") and Zynga (NASDAQ: ZNGA), two leaders in interactive and mobile entertainment, today announced that they have entered into a definitive agreement, under which Take-Two will acquire all of the outstanding shares of Zynga in a cash and stock transaction valued at $9.86[1] per Zynga share, based on the market close as of January 7, 2022, with a total enterprise value of approximately $12.7 billion. Under the terms and subject to the conditions of the agreement, Zynga stockholders will receive $3.50 in cash and $6.36[1] in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing of the transaction. The purchase price represents a premium of 64% to Zynga's closing share price on January 7, 2022.

\* \* \*

**Management Comments**

"We are thrilled to announce our transformative transaction with Zynga, which significantly diversifies our business and establishes our leadership position in

4

mobile, the fastest growing segment of the interactive entertainment industry," said Strauss Zelnick, Chairman and CEO of Take-Two. "This strategic combination brings together our best-in-class console and PC franchises, with a market-leading, diversified mobile publishing platform that has a rich history of innovation and creativity. Zynga also has a highly talented and deeply experienced team, and we look forward to welcoming them into the Take-Two family in the coming months. As we combine our complementary businesses and operate at a much larger scale, we believe that we will deliver significant value to both sets of stockholders, including $100 million of annual cost synergies within the first two years post-closing and at least $500 million of annual Net Bookings opportunities over time."

"Combining Zynga's expertise in mobile and next-generation platforms with Take-Two's best-in-class capabilities and intellectual property will enable us to further advance our mission to connect the world through games while achieving significant growth and synergies together," said Frank Gibeau, CEO of Zynga. "I am proud of our team's hard work to deliver a strong finish to 2021, with one of the best performances in Zynga's history. We are incredibly excited to have found a partner in Take-Two that shares our commitment to investing in our players, amplifying our creative culture, and generating more value for stockholders. With this transformative transaction, we begin a new journey which will allow us to create even better games, reach larger audiences and achieve significant growth as a leader in the next era of gaming."

**Strategic Rationale and Stockholder Value Creation**

With Zynga's stockholders receiving approximately 64.5%[1] of the transaction consideration in Take-Two stock, both groups of stockholders will benefit from the combined company's greater scale, enhanced financial profile, and the synergies created through the transaction.

\*   \*   \*

**Leadership**

At the close of the transaction, Strauss Zelnick will continue to serve as Chairman and CEO, and the management team of Take-Two will continue to lead the combined company. Zynga's highly skilled and proven management team, led by Frank Gibeau and Zynga's President of Publishing, Bernard Kim, will drive the strategic direction for Take-Two's mobile efforts and will oversee the integration, and day-to-day operations of the combined Zynga and T2 Mobile Games business, which will operate under the Zynga brand as its own label within the Company. Additionally, Take-Two will expand its Board of Directors to 10 members upon the closing of the transaction to add two members from Zynga's Board of Directors.

**Terms of the Acquisition**

Zynga stockholders will receive $3.50 in cash and $6.36[1] in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing.

5

The transaction is valued at $9.86[1] per share of Zynga common stock based on the market closing as of January 7, 2022, implying an enterprise value of approximately $12.7 billion.

The transaction includes a collar mechanism on the equity consideration, so that if Take-Two's 20-day volume weighted average price ("VWAP") ending on the third trading day prior to closing is in a range from $156.50 to $181.88, the exchange ratio would be adjusted to deliver total consideration value of $9.86 per Zynga share (including $6.36 of equity value based on that VWAP and $3.50 in cash). If the VWAP exceeds the higher end of that range, the exchange ratio would be 0.0350 per share, and if the VWAP falls below the lower end of that range, the exchange ratio would be 0.0406 per share.

Within the collar range, the final number of Take-Two shares estimated to be issued on a fully diluted basis will range between approximately 50.3 million and 58.5 million shares. Upon closing of the transaction, current Take-Two stockholders will own between 67.2% and 70.4% and current Zynga stockholders are expected to own between 29.6% and 32.8% of the combined company on a fully diluted basis, respectively, including the shares associated with expected settlement of Zynga's two outstanding series of convertible notes due 2024 and 2026.

As part of the transaction, Take-Two has received committed financing of $2.7 billion from J.P. Morgan and intends to fund the cash component of the transaction through a combination of cash from its balance sheet as well as proceeds of new debt issuance.

The merger agreement provides for a "go-shop" provision under which Zynga and its Board of Directors may actively solicit, receive, evaluate, and potentially enter negotiations with parties that offer alternative proposals during a 45-day period following the execution date of the definitive agreement, expiring on February 24, 2022. There can be no assurance this process will result in a superior proposal. Zynga does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

[1] *Within a 7.5% symmetrical collar based on a Take-Two share price of $169.19 as the midpoint.*

[2] *Source: IDG Consulting.*

[3] *Based on the trailing twelve-month period ended September 30, 2021. Combines Take-Two's Adjusted Unrestricted Operating Cash Flow of $467 million and Zynga's Operating Cash Flow of $302 million.*

[4] *Due to different fiscal year ends, appropriate modifications were made to calculate information based on Take-Two's fiscal year end.*

### Approvals and Close Timing

The transaction, which is expected to be completed during the first quarter of Take-Two's Fiscal Year 2023, ending June 30, 2022, is subject to the approval of both Take-Two and Zynga stockholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

The transaction has been unanimously approved by the Take-Two and Zynga Boards of Directors. Moreover, each director and executive officer of Take-Two and Zynga have entered into voting agreements to support the transaction.

### Advisors

J.P. Morgan and LionTree Advisors are serving as financial advisors to Take-Two and Willkie Farr & Gallagher LLP is serving as legal counsel. Goldman Sachs & Co. LLC is acting as financial advisor to Zynga and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23. The Registration Statement omits and/or misrepresents material information concerning: (1) Zynga's, Take-Two's, and the combined company's financial projections; and (2) the financial analyses performed Goldman Sachs; and (3) potential conflicts of interest involving Company insiders.

24. As a result of the omission of the material information (referenced below), the following sections of the Registration Statement are false and misleading, among others: (i) Background of the Combination; (ii) Zynga's Reasons for the Combination and Recommendation of the Zynga Board of Directors; (iii) Opinion of Zynga's Financial Advisor; (iv) Take-Two Unaudited Prospective Financial Information; and (v) Zynga Unaudited Prospective Financial Information.

25. It is imperative that the material information that was omitted from the Registration Statement be disclosed to the Company's shareholders prior to the anticipated shareholder vote. Plaintiff may seek to enjoin Defendants from the shareholder vote on the Proposed Transaction

7

unless and until the below material misstatements and omissions are cured. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Financial Projections

26. The Registration Statement omits material information concerning Zynga's, Take-Two's, and the combined company's financial projections.

27. The Registration Statement fails to disclose how Zynga's updated long-range plan reviewed at the December 11, 2021 Board meeting differed from (i) the Company's long-range plan approved by the Board on October 6, 2021 and (ii) the further updated long-range plan reviewed by the Board on December 29, 2021.

28. With respect to financial projections for Take-Two, Zynga, and the combined company, the Registration Statement fails to disclose: (1) all line items underlying (i) Net Bookings, (ii) Bookings, (iii) Adjusted Net Income, (iv) Adjusted EBITDA, (v) Adjusted Unrestricted Operating Cash Flow, (vi) Unlevered Free Cash Flow, and (vii) Annual Net Bookings Opportunities; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs's Financial Analyses

31. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Goldman Sachs.

32. With respect to Goldman Sachs's "*Illustrative Present Value of Future Stock Price Analysis – Zynga Standalone*," the Registration Statement fails to disclose: (1) the individual inputs and assumptions underlying the discount rate of 7.0% and multiples of 10.0x to 15.0x used in the analysis; (2) the net debt applied to the analysis; and (3) the number of fully diluted shares outstanding applied to the analysis.

33. With respect to Goldman Sachs's "*Illustrative Pro Forma Present Value of Future Stock Price Analysis – Combined Company*," the Registration Statement fails to disclose: (1) the individual inputs and assumptions underlying the discount rate of 6.0% and multiples of 15.0x to 20.0x used in the analysis; (2) the net debt applied; and (3) the number of fully diluted shares outstanding applied.

34. With respect to Goldman Sachs's "*Illustrative Discounted Cash Flow Analysis – Zynga Standalone*," the Registration Statement fails to disclose: (1) the terminal values used in the analysis; (2) the individual inputs and assumptions underlying the discount rates ranging from 6.0% to 8.0% and perpetuity growth rates ranging from 1.5% to 2.5% used in the analysis; (3) the net debt applied; and (4) the number of fully diluted shares outstanding applied.

35. With respect to Goldman Sachs's "*Illustrative Discounted Cash Flow Analysis – Combined Company*," the Registration Statement fails to disclose: (1) the terminal values used in the analysis; (2) the individual inputs and assumptions underlying the discount rates ranging from 5.0% to 7.0% and perpetuity growth rates ranging from 1.5% to 2.5% used in the analysis; (3) the

net debt applied; and (4) the number of fully diluted shares outstanding applied.

36. With respect to Goldman Sachs's "*Selected Precedent Transactions Analysis*," the Registration Statement fails to disclose: (1) the closing dates for the transactions; (2) the total values of each transaction; (3) the net debt applied; and (4) the number of fully diluted shares outstanding applied.

37. With respect to Goldman Sachs's "*Premia Analysis*," the Registration Statement fails to disclose: (1) the transactions observed in the analysis; and (2) the premiums paid therein.

38. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman Sachs's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

39. Without the information described above, the Company's shareholders are unable to fully understand Goldman Sachs's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   **3. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

41. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

42. The Registration Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, the specific content

discussed/communicated.

43. The Registration Statement also fails to disclose and must disclose whether such communications were first authorized by the Board.

44. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

misleading Registration Statement.

49. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly

owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

56. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's

shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| Dated: March 28, 2022 | Respectfully submitted,<br><br>**FARNAN LLP**<br><br>/s/ Michael J. Farnan<br>Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>919 N. Market Street, 12th Floor<br>Wilmington DE 19801<br>Telephone: (302) 777-0300<br>Facsimile: (302) 777-0301<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>*Counsel for Plaintiff* |